# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| NICOLE AMES, Administrator of the Estate of Nicholas Eaton, and NICOLE AMES, mother and next friend of R.R.E.A., a minor child, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07-cv-4068 |
| v. | ) ) | |
| THE ROCK ISLAND BOAT CLUB and TRI-COVE LTD., d/b/a Triangle Inn, | ) ) ) | |
| Defendants. | ) ) | |
| ------------------------------------------------ | ) ) ) | |
| VICKY ZAHN, Administrator of the Estate of Christopher Rector, and VICKY ZAHN, Individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 07-cv-4071 |
| v. | ) ) | |
| TRI-COVE LTD., d/b/a Triangle Inn, Defendant. | ) ) | |

## O P I N I O N  &  O R D E R

The two cases captioned above have been combined for purposes of discovery and pretrial proceedings.  (See Docket Entries in both cases on 1/16/2008).  In Case 07-cv-4068, the following motions are before the Court:  Defendant Tri-Cove Ltd.'s Motion to Dismiss Counts II and III of the Amended Complaint (Doc. 43);

Defendant Rock Island Boat Club's Motion to Dismiss Counts II and III of the Amended Complaint (Doc. 45); Defendants' Joint Motion for Partial Summary Judgment (Doc. 51); Plaintiff Nicole Ames' Motion for Partial Summary Judgment (Doc. 66); and Plaintiff Nicole Ames' motion for leave to file a supplementary affidavit (Doc. 71).

By Order of October 1, 2008, the Court allowed Vicky Zahn (the plaintiff in Case 07-cv-4071) to intervene in case 07-cv-4068 for purposes of responding to Defendants' motion for partial summary judgment. Plaintiff Zahn has also joined in Plaintiff Ames' motion for leave to file a supplementary affidavit. Additionally, Plaintiff Zahn has filed her own Motion for Partial Summary Judgment, in Case 07-cv-4071, which is identical to Plaintiff Ames' summary judgment motion.

The Court finds no need for oral argument as to the issues raised in the pending motions. In the Court's discretion, Plaintiffs' joint motion for leave to file a supplementary affidavit is GRANTED. Further, for the reasons stated below, the Court rules as follows as to the remaining motions: Defendants' Joint Motion for Partial Summary Judgment is DENIED; both Plaintiffs' Motions for Partial Summary Judgment, as to choice of law, are GRANTED; and both Defendants' Motions to Dismiss Counts II and III of Plaintiff Ames' Amended Complaint are GRANTED.

The net effect of the Court's instant summary judgment rulings is a choice-of-law ruling that Iowa law will govern the substantive issues raised in this suit.

## BACKGROUND

This case stems from a tragic motor vehicle accident that occurred on the Centennial Bridge, which separates Rock Island, Illinois from Davenport, Iowa. On April 29, 2007, Matthew Irwin, who was allegedly under the influence of alcohol at the time, was driving northbound on the bridge, traveling from Illinois to Iowa. (Defs.' Jt. SJ SUMF ¶ 10). Irwin apparently lost control of his vehicle, and his vehicle struck a vehicle driven by Nicholas Eaton, which was traveling in the opposite direction on the bridge. Christopher Rector was the rear driver-side passenger in Eaton's vehicle. Both Eaton and Rector were killed as the result of injuries sustained in the accident.[1]

On October 29, 2007, Nicole Ames, acting in her capacity as Administrator of the Estate of Nicholas Eaton, brought a dram shop action in federal court against the business entities that allegedly sold or served alcohol to Matthew Irwin soon before the April 29, 2007 accident. (Doc. 1 in Case No. 07-cv-4068). On November 13, 2007, Vicky Zahn, acting individually as Christopher Rector's mother and as Administrator of the Estate of Christopher Rector, brought a similar dram shop action in federal court. (Doc. 1 in Case No. 07-cv-4071). Subsequently, various defendants were dismissed in both cases.

On August 22, 2008, Plaintiff Ames filed an Amended Complaint which reflected the Court's April 4, 2008 dismissal (without prejudice) and termination of

---

[1] Matthew Irwin subsequently pleaded guilty to two counts of vehicular homicide. (Ex. E to Ptfs.' Jt. SJ Resp.). Irwin is not a defendant in this civil suit.

two defendants named in Ames' original complaint. Ames claimed to have designed her Amended Complaint so as to clarify her intention to sue, under Iowa law, in two separate capacities: (1) as administrator of Eaton's estate and (2) as mother and next friend of Eaton's minor child. Ames also included a request for punitive damages in her Amended Complaint. (Docs. 40-41 in Case No. 07-cv-4068). On September 12, 2008, Plaintiff Zahn filed an Amended Complaint in her lawsuit which reflected the Court's August 29, 2008 dismissal (without prejudice) and termination of five defendants named in Zahn's original complaint. Plaintiff Zahn purportedly designed her Amended Complaint to correct a scrivener's error in her original complaint. (Docs. 53, 56 in Case No. 07-cv-4071).

In Ames' suit, two Defendants remain: The Rock Island Boat Club and Tri-Cove Ltd. ("Defendants"). In Zahn's suit, the only remaining Defendant is Tri-Cove Ltd.

In August and September 2008, each Defendant in the Ames suit filed a separate but identical Motion to Dismiss Counts II and III of Ames' Amended Complaint. In their Motions to Dismiss, Defendants set out two arguments: (1) that, under Iowa law, Ames has no standing to sue (in Count II) as mother and next friend of Nicholas Eaton's minor child to recover damages for the child's lost parental consortium and support and (2) that the punitive damages which Ames seeks (in Count III) are not recoverable under the Iowa Dram Shop Act.

In response to Defendants' Motions to Dismiss, Plaintiff Ames conceded the accuracy of Defendants' arguments under Iowa law. Further, Ames indicated that,

if Iowa law were held to govern, she would stipulate to the dismissal of Counts II and III of her Amended Complaint.[2]  After receiving Ames' response, Defendants reversed course and, on September 16, 2008, filed a Joint Motion for Partial Summary Judgment on the choice-of-law issue.  In their summary judgment motion and corresponding memorandum, Defendants argue that Illinois law should govern.  On November 18, 2008, Plaintiffs Ames and Zahn jointly responded in opposition to Defendants' summary judgment motion, and, on November 24, 2008, both Plaintiffs moved for partial summary judgment as to choice-of-law, arguing that Iowa law should govern.

## LEGAL STANDARD

Generally, summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to  judgment as a matter of law." [3]  Fed. R. Civ. P. 56(c).  A court may use the summary judgment

---

[2] In her response to Defendants' Motions to Dismiss, Ames asserted that Defendants had conceded the choice-of-law issue because their Motions to Dismiss were premised on Iowa law.  However, Ames failed to properly advance this argument in responding to Defendants' summary judgment motion.  Therefore, the Court will not consider the merit of the argument.

[3] There is a tension between the summary judgment mechanism and the choice-of-law determination.  See Mayo v. Hartford Life Ins. Co., 220 F. Supp.2d 714, 730 n.37 (S.D. Tex. 2002).  The summary judgment standard leaves disputed material facts to the jury, while the choice-of-law determination is generally a preliminary matter for the court to decide.  See Matter of Yagman, 796 F.2d 1165, 1171 n.2 (9th Cir. 1986) (choice of law is a legal determination to be made by the court); see also Taylor v. Lifetouch Nat'l School Studios, Inc., 490 F. Supp.2d 944, 950 (N.D. Ind. 2007).  Nevertheless, it is common for courts to make choice-of-law determinations via partial summary judgment.  See, e.g., Budget Rent-A-Car Sys., Inc. v. Chappell,

mechanism to establish certain facts or issues, even if summary judgment is not rendered on the whole action.  See Fed. R. Civ. P. 56(d).  "[M]otions for partial summary judgment are permitted."  Am. Nurses Ass'n v. Illinois, 783 F.2d 716, 729 (7th Cir. 1986).  Under certain circumstances, partial summary judgment can serve a useful purpose and promote efficiency in litigation.  See Precision Indus. v. Behnke Lubricants, Inc., 396 F. Supp.2d 1012, 1016 (S.D. Iowa 2005).

## ANALYSIS

The Court's exclusive objective in this Opinion is to select the law that will govern the substantive issues in this suit, going forward.[4]

A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it is located.  Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000).  Accordingly, this Court looks to Illinois conflict-of-laws rules.  Illinois has adopted the choice-of-law approach that was developed by The

---

407 F.3d 166, 169 (3rd. Cir. 2005); California v. United States, 805 F.2d 857, 860 (9th Cir. 1986); Love v. Blue Cross & Blue Shield of Georgia, Inc., 439 F. Supp.2d 891, 891-98 (E.D. Wis. 2006); NL Indus., Inc. v. Commercial Union Ins. Cos., 926 F. Supp. 1213, 1218 (D. N. J. 1996).  In the present case, using the summary judgment mechanism to make a choice-of-law ruling is uncomplicated because there are no genuine factual disputes to resolve -- as will be discussed later is this Opinion.  See Gallenberg Equip., Inc. v. Agromac Int'l, Inc., 10 F. Supp.2d 1050, 1052 (E.D. Wis. 1998).  Further, the necessary facts are developed at this stage so as to warrant a choice-of-law ruling.  Cf. Harper v. LG Elec. USA, Inc., --- F. Supp.2d ----, 2009 WL 242416, at * 3 (D.N.J. Feb. 3, 2009) (unable to make a choice-of-law ruling via motion to dismiss due to inadequate factual record).

[4] In light of Plaintiff Ames' concessions regarding Iowa law, the Court's instant rulings on choice-of law-issues make it unnecessary to engage in any substantive discussion of Defendants' Motions to Dismiss.

American Law Institute and reflected in the Restatement (Second) of Conflict of Laws.  Townsend v. Sears, Roebuck & Co., 879 N.E.2d 893, 898-910 (Ill. 2007).

## Identification of Conflicts

Under the Second Restatement's approach, the first step is to isolate the issues as to which conflicts of law exist.  Id. at 898-99.  In this case, the parties have identified the following conflicts between the dram shop statutes of Illinois and Iowa.  First, the Illinois dram shop statute confers a right of action only on persons injured within the State of Illinois, see 235 Ill. Comp. Stat. 5/6-21,[5] whereas the Iowa dram shop statute imposes no such limit in cases of extraterritorial injuries.  Bankord v. DeRock, 423 F. Supp. 602, 606 (N.D. Iowa 1976) (construing the Iowa dram shop statute in favor of extraterritorial application).  It is important to point out that the Iowa dram shop statute imposes the prospect of liability on out-of-state liquor licensees.  See Iowa Code § 123.92.  Second, under the Iowa statute, the plaintiff must prove that the defendant liquor licensee "knew or should have known" that it was serving a patron who was, or would become, intoxicated, see Smith v. Shagnasty's Inc., 688 N.W.2d 67, 74 (Iowa 2004), whereas the Illinois statute does not require that element of proof.  See Reed for Use and Benefit of Reed v. Fleming, 477 N.E.2d 733, 735-36 (Ill. App. Ct. 1985); see also Tresch v. Nielsen, 207 N.E.2d 109, 111 (Ill. App. Ct. 1965) (liability without fault).  Third, the Illinois

---

[5] See also Graham v. Gen. U.S. Grant Post No. 2665, V.F.W., 248 N.E.2d 657, 661 (Ill. 1969) ("[T]he Illinois Dram Shop Act may not be applied extraterritorially to permit recovery for injuries inflicted outside Illinois.").

dram shop statute expressly caps damages, whereas the Iowa statute does not.  The first two issues relate to liability; the third relates to damages.

### Presumptive Governing Law

The next step under the Second Restatement's choice-of-law approach is to determine whether a presumption applies in favor of one state's law.  <u>Townsend</u>, 879 N.E.2d at 909.

In personal injury actions, such as this one,[6] there is a presumption that the rights and liabilities of the parties are governed by the law of the state in which the injury occurred.  <u>Id.</u> at 903-04 (citing Section 146 of the Second Restatement).  As is discussed in greater detail below, Plaintiffs have presented uncontroverted evidence showing that the injuries to Nicholas Eaton and Christopher Rector occurred on the portion of the Centennial Bridge that is located in Iowa.  (12/8/2008 K.J. Mayer Aff. ¶¶ 5-6).

Defendants' stance against a presumption in favor of Iowa law hinges on their argument that it is not feasible to determine the state in which the decedents' injuries occurred.  Defendants maintain that this determination is not feasible because "Illinois and Iowa exercise concurrent jurisdiction over the bridge" (Defs.' Jt. SJ Mem. at p. 7) and because "the span of Centennial Bridge is jointly owned by the states of Iowa and Illinois . . . ." (Defs.' Jt. SJ Reply at p. 2).  Defendants attach various agreements and corresponding conveyancing documents purporting to show

---

[6] The parties agree that this suit is properly characterized as a personal injury action, for purposes of choice-of-law analysis.  (Defs.' Jt. SJ Mem. at p. 6-7; Ptfs.' Jt. SJ Resp. at p. 7-10).

concurrent ownership of and concurrent jurisdiction over the bridge, as between Illinois and Iowa.

Defendants' "ownership/jurisdiction" argument is a red herring, and the documents they have attached are irrelevant to this choice-of-law analysis. First, the Bridge Transfer And Improvement Agreement, upon which Defendants rely heavily, mentions concurrent jurisdiction only in the context of maintenance and improvements to the bridge. (Ex. 1 to Defs.' Jt. SJ Mem. at p. 9, Section 3.01). Second, ownership of the bridge does not bear directly on choice of law. Whether a particular person or entity owns a piece of real property is a concern that is distinct and separate from the <u>location</u> of that property in relation to state boundary lines. The central question, for purposes of Section 146 of the Second Restatement, is whether the auto accident occurred within the boundary lines of the State of Illinois or within the boundary lines of the State of Iowa.

The Centennial Bridge crosses the Mississippi River, connecting Rock Island, Illinois and Davenport, Iowa. In <u>Iowa v. Illinois</u>, 147 U.S. 1, 13-14 (1893), the United States Supreme Court held that the boundary line separating the states of Iowa and Illinois is the middle of the main navigable channel of the Mississippi River. This means that there is a portion of the Centennial Bridge that is located within the State of Iowa and a portion that is located within the State of Illinois. Defendants seem to have admitted as much in their reply brief; however, they contend that "the record does not contain sufficient facts upon which to base a

conclusion about where the Iowa-Illinois boundary line is relative to the accident site." (Defs.' Jt. SJ Reply at p. 8).

In response to Defendants' contention regarding evidentiary insufficiency, Plaintiffs filed a motion for leave to submit an affidavit from K.J. Mayer, a police officer employed by the City of Davenport, Iowa, who investigated the April 29, 2007 accident that killed Eaton and Rector. In his affidavit, which is attached to the motion for leave, Officer Mayer swears that, based on his investigation, "the impact between Matthew Irwin's vehicle and Nicholas Eaton's vehicle occurred on the Iowa side of the bridge . . . ." (12/8/2008 Mayer Aff. ¶ 5).[7] Defendants did not respond in opposition to Plaintiffs' motion for leave to supplement the record with Officer Mayer's affidavit.[8]

The location of the Illinois-Iowa boundary line in relation to the accident site is a fact that is material to the selection of governing law in this suit. Defendants may well be correct when they suggest that the Court should refrain from

---

[7] The affidavit attaches two annotated aerial photographs of the Centennial Bridge, which Officer Mayer represents as being maintained as public records of the City of Davenport Engineering Department. (12/8/2008 Mayer Aff. ¶ 3). The annotations on the photos purport to show the precise boundary line that separates Iowa from Illinois. In addition, Officer Mayer made his own annotations to the photos to illustrate his estimate of the exact location of the accident. The annotations are consistent with Officer Mayer's sworn statement that the accident occurred on the Iowa side of the bridge.

[8] Defendants were directed to respond by December 29, 2008. (See 12/09/2008 Docket Entry in Case No. 07-cv-4068). Because no evidentiary objections were timely raised as to Officer Mayer's affidavit, any such objections have been waived, at least for purposes of the instant cross-motions for partial summary judgment. See In re Leigh, 165 B.R. 203, 227-28 (N.D. Ill. 1993) (citing Friedel v. City of Madison, 832 F.2d 965, 971 n.4 (7th Cir. 1987)).

attempting to independently confirm the pinpoint location of the border at the Centennial Bridge.  Even so, Defendants are still not excused from presenting <u>some</u> evidence which would tend to show that the accident occurred on the Illinois side of the bridge.  Defendants have failed to present any such evidence.  As a result, there is no genuine dispute regarding the fact that the accident occurred in Iowa.  Accordingly, a presumption exists in favor of applying Iowa law to determine the rights and liabilities of the parties.[9]

### Testing the Presumption

With a strong presumption set in favor of Iowa law, the next step in the choice-of-law analysis is to test the presumption against the principles set forth in Section 6 of the Second Restatement.  This test entails the consideration of contacts identified in Section 145(2).  <u>See</u> <u>Townsend</u>, 879 N.E.2d at 905-06.  The principles/concerns listed in Section 6 are as follows:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

---

[9] Defendants argue that, even if the accident did occur in Iowa, no presumption should arise in favor of Iowa law because the location of the accident was merely the result of happenstance. (Defs.' Jt. SJ Mem. at p. 7).  Defendants cite Comment e to Section 145 of the Second Restatement to support this proposition.  That comment, however, does not directly relate to the initial <u>lex loci delicti</u> presumption; rather, the comment is simply meant to reinforce the idea that the initial presumption must be weighed against other interests at play.  Further, Comment e to Section 146 provides, "The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there."

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Id. at 900.

The contacts (i.e. factual connecting factors) listed in Section 145(2), to be

considered when applying Section 6, are as follows:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Id. at 901.  The Court must evaluate these contacts according to their relative

importance with respect to the particular issue at hand.  Id.

For purposes of identifying the contacts listed in Section 145(2), the Court

finds as follows: Matthew Irwin's vehicle began to skid on the Iowa side of the

bridge, resulting in the accident (12/8/2008 Mayer Aff. ¶ 4); Eaton's and Rector's

injuries occurred in Iowa (12/8/2008 Mayer Aff. ¶ 5); Matthew Irwin's drinking to

the point of intoxication occurred in Illinois (Defs.' Jt. SJ SUMF ¶ 6; Ptfs.' Resp. to

Defs.' SUMF ¶ 6); Defendants are Illinois corporations, and their principle places of

business are located in Illinois (Ptfs.' Resp. to Defs.' SUMF ¶ 2); Plaintiff Ames is an

Iowa resident, as was Nicholas Eaton at the time of his death (Ptfs.' Add. UMF ¶¶

11-12; Defs.' Resp. to Ptfs.' Add. UMF ¶¶ 11-12); Christopher Rector resided in Iowa at the time of his death (Ptfs.' Add. UMF ¶ 16; Defs.' Resp. to Ptfs.' Add. UMF ¶ 16); the estates of both Eaton and Rector were (or are being) probated in Iowa courts (Ptfs.' Add. UMF ¶¶ 11, 15; Defs.' Resp. to Ptfs.' Add. UMF ¶¶ 11, 15).  There is no indication of any relationship between the parties prior to the April 29, 2007 accident.

I.    Rights of Action and Issues of Liability

In applying Section 6 of the Second Restatement to the facts of this case, the Court will focus on the principles identified in Subsections (b) through (d) of Section 6.  As discussed above, the two liability-related conflicts of law in this case involve (1) liability in cases of extraterritorial injuries and (2) the standards of care to be applied.

1.    Compensation for extraterritorial injuries

Under Subsections (b) and (c) of Section 6, the Court must address the policies and interests of the forum state (Illinois) and other interested states.  Iowa is the only other interested state in this case.

Iowa's dram shop statute was enacted with an intent to "place a hand of restraint on persons permitted to sell liquor . . . ."  Atkins v. Baxter, 423 N.W.2d 6, 9 (Iowa 1988).  The statute has been characterized as remedial and compensatory. See Slager v. HWA Corp., 435 N.W.2d 349, 357 (Iowa 1989).  The State of Iowa certainly has an interest in providing a mechanism to compensate the estates of Iowa residents who are killed by drunk drivers.  In addition, Iowa has an interest in

ensuring the safety of those who travel on its roads and highways.  Both Eaton and Rector were Iowa residents at the time of the accident.  Their estates were (or are being) probated in Iowa courts.  Both men were traveling in Iowa at the time of the accident.  Therefore, Iowa has a strong interest in having its law applied to govern liability in this suit.

Illinois' interest is not as strong.  The Illinois dram shop statute provides a right of action only to those individuals injured within Illinois boundaries.  The Illinois statute reflects a policy goal of ensuring the safety of Illinois citizens.  See Stevens v. Lou's Lemon Tree, Ltd., 543 N.E.2d 293, 299 (Ill. App. Ct. 1989), appeal denied, 548 N.E.2d 1078 (Ill. 1989).  The statute's exclusive focus on injuries occurring within Illinois also suggests a policy goal of protecting all persons -- Illinois citizens or not -- while they are present within the state.  These policy goals are not directly implicated in this case because the decedents were Iowa residents who sustained injuries outside Illinois.  Further, there is no indication in the record that Plaintiffs have any significant connection to Illinois.

As to the Subsection (d) principle of protecting justified expectations, the Court finds that applying Iowa law would not defeat Defendants' settled expectations about their exposure to dram shop liability.  Defendants do business in a state that has a dram shop statute in effect.  Therefore, broadly speaking, it should come as no shock to Defendants that they could be held liable for personal injuries resulting from the conduct of an intoxicated patron.

As a practical matter, it would be inappropriate to apply the Illinois dram

shop statute's liability provisions to the facts of this case.  Because the relevant injuries occurred outside Illinois, Plaintiffs would be without a right of action under the Illinois statute.  Further, it would be especially troubling for this Court to construe Illinois conflict-of-laws rules in a way that denies Plaintiffs the opportunity to bring a dram shop action, as it is possible that Illinois is the only state in which the Defendant liquor licensees are subject to personal jurisdiction.  See Meyers v. Kallestead, 1992 WL 280450, at *5 (N.D. Ill. Sept. 30, 1992); cf. Meyers v. Kallestead, 476 N.W.2d 65, 68 (Iowa 1991) (Illinois business owner has insufficient contacts with Iowa to permit personal jurisdiction in dram shop action).  Already, the parties' briefs indicate a dispute as to whether Defendants have sufficient contacts with Iowa to be haled into court in that state.  (Ptfs.' Jt. SJ Resp., Disp. Facts ¶ 21).

2.  Standard of care

Under the Illinois dram shop statute, there is no requirement of fault to establish liability.  See Nelson v. Araiza, 372 N.E.2d 637, 638 (Ill. 1978); Jackson v. Moreno, 663 N.E.2d 27, 29 (Ill. App. Ct. 1996).  Conversely, under the Iowa statute, a plaintiff must prove that the defendant liquor licensee "knew or should have known" that the patron being served was or would become intoxicated.  See Iowa Code. § 123.92; see Hobbiebrunken v. G & S Enters., Inc., 470 N.W.2d 19, 21-22 (Iowa 1991) (strict liability abolished in 1986).  Therefore, it is generally more difficult for a plaintiff to establish a liquor licensee's liability under the Iowa statute.

The Illinois statute's strict liability provision reflects a policy that liquor licensees should be held to account for the injuries that result from their business of selling alcohol.  See Stevens, 543 N.E.2d at 297 (characterizing the Illinois statute as penal); see also Lichter v. Scher, 138 N.E.2d 66, 71 (Ill. App. Ct. 1956) ("The Dram Shop Act is . . . designed to discipline a legal but illfavored trade.").  However, as noted above, applying the Illinois statute in this particular case would not work toward that policy because it would prohibit Plaintiffs from maintaining a dram shop action against Defendants in the first place.

Iowa's dram shop statute reflects a legislative choice that liability should attach only to those liquor licensees that do know or should know better than to serve a patron who is or will become intoxicated.  Application of the Iowa dram shop statute's liability provisions in this suit would not only allow Plaintiffs their day in court, it would also allow Defendants an opportunity to avoid liability if the evidence reveals that they were not at fault in serving alcohol to Matthew Irwin on April 28-29, 2007.  Allowing Defendants this added level of protection would conflict with Illinois' policy of holding liquor licensees strictly liable for personal injuries resulting from their trade.  Nevertheless, this Court must choose between the two standards of liability.

Given the Section 145(2) contacts identified above, it is clear that Iowa is more interested in the result of this suit than is Illinois.  Although Illinois has an interest in controlling the business conduct of dram shops located within its borders, that interest is outweighed by Iowa's strong interests in this suit, which

include (1) the potential compensation of Iowa residents and (2) the reigning-in of unfavorable practices of dram shops operating close to the Iowa border.  Moreover, as to Subsection (g) of the Second Restatement's Section 6, there is nothing particularly complex about the "knew or should have known" standard that the Iowa statute imposes.

All factors and principles considered, the application of the Iowa dram shop statute to govern liability in this suit yields a much fairer result than the alternative.  Under the circumstances present in this case, the Court cannot say that Illinois' interest in having its law govern liability outweighs the <u>lex loci delicti</u> presumption in favor of Iowa law.  The presumption survives.  Accordingly, it is the ruling of this Court that Iowa law will govern the rights and liabilities of the parties in this action.

II.    <u>Damages</u>

In the context of choice-of-law analysis under the Second Restatement, issues of damages are distinct from issues of liability.  <u>See</u> Restatement (Second) of Conflict of Laws § 171 (West 2008).  The Illinois dram shop statute places the following caps on recoverable damages:

> For all causes of action involving persons injured, killed, or incurring property damage on or after July 1, 1998, in no event shall the judgment or recovery for injury to the person or property of any person exceed $45,000 for each person incurring damages, and recovery under this Act for either loss of means of support or loss of society resulting from the death or injury of any person shall not exceed $55,000. Beginning in 1999, every January 20, these liability limits shall automatically be increased or decreased, as applicable, by a percentage equal to the percentage change in the consumer price index-u during the preceding 12-month calendar year.

235 Ill. Comp. Stat. 5/6-21; see Stevens, 543 N.E.2d at 298 (discussing constitutionality of the Illinois dram shop statute's caps on damages).  The purpose of the caps is to limit recovery under the statute, thereby limiting the financial exposure of liquor licensees.  See Thorsen v. City of Chicago, 392 N.E.2d 716, 725 (Ill. App. Ct. 1979).  Iowa's dram shop statute, however, does not similarly limit recoveries.  See Gail v. Clark, 410 N.W.2d 662, 673-75 (Iowa 1987) (affirming a jury verdict of $1,161,000 in dram shop action); Burkis v. Contemp. Indus. Midwest, Inc., 435 N.W.2d 397, 399 (Iowa Ct. App. 1988) (affirming jury verdict of $1,375,000 in dram shop action).

Applying Section 6 of the Restatement, it is clear that Iowa's focus on compensating prevailing plaintiffs in dram shop actions is at odds with Illinois' policy of limiting licensee exposure to large verdicts.  All that can be said is that the interests of the two states are equally strong on the issue of damages.  With regard to the protection of justified expectations, Defendants, as liquor licensees operating close to the Iowa-Illinois border, should reasonably expect potential exposure to dram shop liability under either state's statute.

The remaining Section 6 factors weigh in favor of applying Iowa law as to damages.  Simply put, given the Court's holding that Iowa law will govern the parties' rights and liabilities, it would be difficult, here, to switch direction and apply Illinois law to cap any potential damages awards.  The Illinois dram shop statute has been characterized as penal and regulatory in nature.  Lichter, 138 N.E.2d at 71-72.  It operates mechanically in that it subjects liquor licensees to

strict liability but, at the same time, caps their financial exposure at defined amounts. Conversely, the Iowa statute operates in greater accord with traditional tort principles. See Slager, 435 N.W.2d at 361 (McGiverin, C.J., dissenting) (analogizing liability under the Iowa dram shop statute and other types of unintentional tort liability). The two states' dram shop statutes are of fundamentally different characters. Any attempt to mix and match liability and damages provisions as between them would tend to undermine the Section 6 principles of uniformity of result and ease of application. Accordingly, the Court holds that Iowa law will govern all substantive issues concerning damages in this lawsuit.

## Related Motions to Dismiss

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is only proper if a plaintiff cannot prove any set of facts upon which relief can be granted. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir. 1996). The purpose of a Rule 12(b)(6) motion is to question the availability of a legal formula justifying relief on the alleged facts. Maple Lanes, Inc. v. Messer, 186 F.3d 823, 824-25 (7th Cir. 1999).

In their Motions to Dismiss Counts II and III of Plaintiff Ames' Amended Complaint, Defendants object to Ames' standing to sue, in Count II, on behalf of her minor child for the child's loss of parental consortium and support resulting from Nicholas Eaton's death. Defendants assert that Iowa law requires that the claim for loss of parental consortium and support be brought through the decedent's

estate.  Defendants also object to Plaintiff Ames' request for punitive damages in Count III, arguing that exemplary or punitive damages are not recoverable under the Iowa dram shop statute.

In her response to Defendants' Motions to Dismiss, Plaintiff Ames has represented that, if Iowa law were held to govern this dispute, she would concede the dismissal of Counts II and III.  The Court has held above that the law of Iowa will govern.  Therefore, the Court will dismiss Counts II and III of Plaintiff Ames' Amended Complaint.

## CONCLUSION

For the reasons stated above, the Court rules as follows: Plaintiffs' motion for leave to file a supplementary affidavit (Doc. 71 in Case No. 07-cv-4068) is GRANTED; Defendants' Joint Motion for Partial Summary Judgment (Doc. 51 in Case No. 07-cv-4068) is DENIED.  Both Plaintiffs' Motions for Partial Summary Judgment, as to choice of law, (Doc. 66 in Case No. 07-cv-4068 & Doc. 65 in Case No. 07-cv-4071) are GRANTED.  Both Defendants' Motions to Dismiss Counts II and III of Plaintiff Ames' Amended Complaint (Docs. 43 & 45 in Case No. 07-cv-4068) are GRANTED.

The net effect of the Court's instant summary judgment rulings equals a choice-of-law ruling that Iowa law will govern the substantive issues raised in this suit.  Both cases are referred to Magistrate Judge Gorman for further pretrial proceedings.

ENTERED this <u>17th</u> day of February, 2009.

<u>s/ Joe B. McDade</u><br>
JOE BILLY MCDADE<br>
United States District Judge